UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA              :

   -v.-                                              :         14 Cr. 314 (RA)

RENE CARDONA,                                 :

                     Defendant.         :

------------------------------------------------------------x

# THE GOVERNMENT'S SENTENCING MEMORANDUM

                                        PREET BHARARA
                                        United States Attorney
                                        Southern District of New York
                                        Attorney for the United States of America

Gina Castellano
Andrew DeFilippis
Assistant United States Attorneys
- Of Counsel -

## THE GOVERNMENT'S SENTENCING MEMORANDUM

As a result of his victimization and sexual exploitation of at least two young boys, among other despicable crimes, the defendant Rene Cardona (the "defendant") was found guilty following a bench trial on stipulated facts of all five counts against him – two counts of production of child pornography, one count of receiving child pornography, one count of distributing child pornography, and one count of possessing child pornography – which subject him to a Sentencing Guidelines range of 292 to 365 months' imprisonment.  Sentencing in this matter is scheduled for August 20, 2015, at 11:30 a.m.  The Government respectfully submits this memorandum in advance of sentencing and in response to the defendant's sentencing memorandum dated July 27, 2015 ("Def. Mem.").

## PRELIMINARY STATEMENT

Even amongst those convicted of child pornography crimes, the defendant's crimes stand out as egregious.  Apparently not satisfied with downloading and possessing child pornography, including hundreds of horrific images of child abuse created by others, the defendant chose to induce and produce his own collection of child pornography.  Through a series of manipulative instant messages, the defendant induced Victim-1, an 11-year-old boy, to take sexually explicit photographs of himself and send them to the defendant.  *See* Presentence Investigation Report ("PSR") ¶¶ 10-11.  But the defendant did not draw the line at inducing the production of child pornography over the Internet.  Instead, he went as far as he could possibly go:  after being diagnosed as HIV positive, the defendant engaged Victim-2, a 14-year-old boy, in oral sex and videotaped it, and he distributed a sexually explicit image of Victim-2 over the Internet.  *See id.* ¶¶ 12-13.

The defendant refers to this case as a tragic one, and indeed it is. The tragedy is the unimaginable harm that this defendant has inflicted on his victims. As just punishment for this tragedy, as well as to effect both specific and general deterrence, reflect the seriousness of the defendant's offenses, promote respect for the law, and protect the public from the defendant, the Government respectfully submits that a sentence within the Guidelines range of 292 to 365 months' imprisonment would be sufficient, but not greater than necessary.

## OFFENSE CONDUCT

On or about March 13, 2014, the Guam Police Department received information that Victim-1, while residing in Guam, produced child pornography for an adult male in New York, New York, later identified as the defendant. *See id.* ¶¶ 15(a)-(d), 21. Victim-1 met the defendant over the social media site Instagram in or about February 2014. *See id.* FBI agents in Guam subsequently obtained a search warrant directed to Instagram for the contents of the defendant's and Victim-1's Instagram accounts, which reflect that in or about February 2014, the defendant and Victim-1 developed an online relationship and had sexually explicit discussions. *See id.* Over the course of several days, the defendant and Victim-1 traded photographs, with the defendant repeatedly asking Victim-1 to provide sexually explicit photographs of himself. *See id.* Victim-1 eventually provided the defendant with five sexually explicit photographs of himself engaged in the lascivious exhibition of his genitals. *See id.* The defendant's Instagram account further reflects that in or about February 2014, the defendant provided an image of Victim-2 engaged in sexually explicit conduct to another individual over the Internet. *See id.* ¶¶ 15(e), 22.

After reviewing the Instagram accounts, identifying the defendant's residence, and learning that the defendant had been employed in an afterschool program located in the Bronx, New York, serving children ages 6 to 12, the Government obtained a search warrant for the

defendant's residence.  *See id.* ¶ 15(h)-(k).  During the execution of the search warrant, the defendant admitted to law enforcement personnel that he had engaged in the chats with Victim-1 described above.  The defendant further admitted that he had had sexual contact with Victim-2, whom the defendant met in February 2013; that the defendant performed oral sex on Victim-2 approximately ten to twenty times over a year period; and that the defendant took three to four sexually explicit photographs of Victim-2. *See id.* ¶ 16.  The defendant further admitted that he had been working in an afterschool program for at least two years and that he had had inappropriate sexual contact with several children, including children whom he had encountered through his involvement in the afterschool program. *See id.* ¶ 37.  In a subsequent statement to law enforcement personnel, the defendant informed law enforcement that he is HIV positive. *See* Suppression Hearing Tr. at 111:4-14; *see also* PSR ¶ 96 (defendant was diagnosed with HIV in 2012).

   During the course of the search, the agents identified a laptop computer and an iPhone, which were each later confirmed to belong to the defendant.  *See* PSR ¶ 17(e).  Forensic analysis revealed that the laptop and iPhone contained hundreds of images and videos that depicted actual minors engaged in sexually explicit conduct. *See id.* ¶ 27(a).  Some of the files contained on the laptop and iPhone depicted pre-pubescent minors engaged in sexually explicit conduct. *Id.*  One video contained on the iPhone was taken by the defendant on his iPhone (the "Victim-2 Video") in or about October 2013 and depicts the defendant engaging Victim-2 in oral sex. *See id.* ¶ 22(c).

## DISCUSSION

A.  **The Defendant's Crime Is Extraordinarily Serious and Warrants a Guidelines Sentence**

The defendant's possession of hundreds of images of child abuse is a heinous crime standing alone. Those images depict real children who suffer knowing that images of them are repeatedly accessed. The harm that the defendant directly inflicted on Victim-1 and Victim-2 is even more abhorrent. The defendant repeatedly requested Victim-1 to take nude photos of himself and send them to the defendant, illustrating how the defendant preyed on an 11-year old-boy, one of the most vulnerable members of our society, to get exactly what he wanted — pictures of Victim-1's penis. Among other things, the defendant wrote to Victim-1:

- "And I wanna see yours";
- "Baby lemme see yours";
- "Has he seen a picture of your beautiful part? [] Cus that's what I wanna see";
- "And then u send me one too. No one will find out"; and
- "Send me vid . . . Another pic thwn."

*See id.* ¶¶ 32-35. The defendant's messages to Victim-1 are disturbing; the photos that the defendant induced Victim-1 to take and send to him are unspeakable.

As to Victim-2, it is traumatizing even to view the defendant's homemade child pornography video of the defendant sexually abusing Victim-2.[1] It is impossible to imagine the harm the defendant has caused Victim-2. The defendant argues that it is a mitigating factor that the Government only identified one instance of the defendant distributing a sexually explicit

---

[1] In order to fully appreciate the horrific nature of the child pornography the defendant created, possessed, and viewed, it is necessary to see the images and videos themselves. In this case, the Court has seen certain of the images and a video. To the extent the Court wishes to see the remaining images either in advance of or at the sentencing, the Government can facilitate that viewing upon request.

5

image of Victim-2 — an image that the defendant himself produced. *See* Def. Mem. at 8. But who knows how many times that one image that the defendant personally added to the child pornography market has been viewed? As the U.S. Sentencing Commission has recognized, "Both Congress and the Supreme Court have concluded that the ongoing distribution of child pornography images violates the victim's privacy and exacerbates the continued harms to the victim. . . . this is a harm distinct from that caused during the production of the images . . . ." U.S. Sentencing Commission Report to the Congress: Federal Child Pornography Offenses (December 2012) ("Sentencing Commission Report") at 112. The defendant's distribution of the image of Victim-2 is an aggravating, not a mitigating, factor.

The defendant's crimes were predatory. He induced children to create child pornography. Furthermore, by his own admission, the defendant "had sexual contact with at least two boys since [he] was an adult, but maybe more." Government Trial Ex. 6-R (Docket #73). The defendant met one of these young boys at church and the other at the afterschool program where the defendant worked. *See id.* The defendant's victims are real, and the harm that he imposed is immeasurable and irreversible. He should be sentenced accordingly.

**B.     The Defendant's Arguments for the Minimum Sentence Are Unpersuasive**

The defendant argues that the Court should sentence the defendant to the mandatory minimum sentence of 180 months' imprisonment because of his "candor and cooperation with law enforcement, his remorse, his acceptance of responsibility, his unique and tragic familial circumstances, his prognosis for rehabilitation, the fact that he does not have a criminal record, and his positive accomplishments." Def. Mem. at 1. While the Court should consider the defendant's personal history and characteristics, including his own history of being sexually

abused, the defendant does not present any arguments or facts that justify a below-Guidelines sentence in light of the horrific nature and circumstances of his offenses.

First, the Court should reject defendant's plea for leniency based on the defendant's lack of a criminal record and acceptance of responsibility. *See* Def. Mem. at 10-11. Both of these factors are already accounted for in the Guidelines calculation. Moreover, the defendant's purported "candor" and "acceptance of responsibility" must be placed in context. The Court "simply [did not] believe" the defendant's testimony during the suppression hearing in this matter. *See* Suppression Hearing Tr. at 158:24. Although the Government agrees that the defendant is deserving of the three-point decrease in offense level because he opted to proceed via bench trial on stipulated facts as opposed to a jury trial that would have involved victim testimony, the defendant is unlike those defendants who immediately plead guilty, proceed to sentencing, endure their punishment, and move on with their lives. The defendant moved to suppress his confession, lied to the Court, and intends to appeal his conviction. He may be remorseful for his conduct, but he has sought and continues to seek to escape punishment.

Second, the Court should carefully scrutinize the defendant's argument that his "history and characteristics make him a very low risk to re-offend." Def. Mem. at 13. The defendant's argument relies, in part, on an inadequate psychological report filed along with his sentencing submission. *See id.* at Ex. A. The report fails to include any form of objective testing and relies entirely on the defendant's self-reporting at a time that pre-dated the defendant's conviction — that is, it simply takes the defendant's words about himself as true. Moreover, the report was not written having seen the evidence in this case. Even taking the report at its face, it finds that the defendant falls within the "low-moderate risk category" using the SONAR system; the "$25.4^{th}$ percentile in terms of risk" using the LS/CMI assessment; the "moderate-high risk category for

sexual recidivism" using the Static-99R risk assessment system; and "moderate" risk of sexual violence using the Sexual Violence Risk-20 instrument.  *See* Def. Mem. at Ex. A 9-10.  The defendant's submission only emphasizes the results of the SONAR system.[2]  *See id.* at 6.  Given the predatory nature of the defendant's conduct and his potential for recidivism, there can be no doubt that the public needs protection from the defendant.

Third, the fact that the defendant committed the instant offense while otherwise engaged as a productive member of society, as a student at John Jay College, is not a mitigating factor. *See* Def. Mem. at 10.  Rather, in the Government's view, these circumstances further counsel in favor of a Guidelines sentence.  Indeed, it appears that the defendant may have used his intelligence to secure employment where he could surround himself with children.  From 2012 until January 2014, the defendant worked as an after school counselor in Bronx, New York, and was assigned to a fifth-grade class with about 20 children.  *See* PSR ¶ 109.

Finally, to the extent that the defendant is arguing that a Guidelines sentence would create an unwarranted sentencing disparity amongst similarly situated defendants, his argument falls flat.  During the past two decades, average sentences for child pornography production offenses such as this one consistently have been longer than average sentences for non-production offenses (including possession offenses).  *See* Sentencing Commission Report at 252-53.  Statistics provided by the Sentencing Commission make it clear that at least 50% of sentences in production cases from 2010 and 2011 were within the Guidelines range.  *See id.* at 254. The Government of course recognizes that this Court has the discretion to sentence the defendant to the mandatory minimum sentence of 180 months' imprisonment – as did the judges

---

[2] Moreover, the Sentencing Commission's statistics on recidivism (attached to defendant's submission as Exhibit D) state that defendants, such as the defendant, who are sentenced between the ages of 21 and 25 years old, have a 22.3% rate of recidivism (not 12.1%, as defense counsel cites in error (*see* Def. Mem. at 13)).

8

in the approximately 20 cases from across the country that the defendant cites, *see* Def. Mem. at 2-4.  But, it is the Government's position that, as to this defendant, a sentence below the Guidelines range would be inappropriate, considering the defendant's heinous crimes, his history and characteristics, and the need to serve the legitimate interests of sentencing — including just punishment for the offense, the protection of the public and specific and general deterrence.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence within the Guidelines Range, a sentence which would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Dated: New York, New York
August 3, 2015

Respectfully submitted,

PREET BHARARA
United States Attorney

By: ___/s Gina Castellano_____
Gina Castellano
Andrew DeFilippis
Assistant United States Attorneys
(212) 637-2224/2231