F8KKCARS                          SENTENCE

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                            14 CR 314 (RA)

5    RENE CARDONA,

6                   Defendant.

7    ------------------------------x

8                                      New York, N.Y.
                                       August 20, 2015
9                                      11:35 a.m.

10

     Before:
11
                         HON. RONNIE ABRAMS,
12
                                       District Judge
13

14                          APPEARANCES

15
     PREET BHARARA,
16        United States Attorney for the
          Southern District of New York
17   GINA MARIE CASTELLANO
     ANDREW DeFILIPPIS
18        Assistant United States Attorneys

19   DANIEL DeMARIA
     CARLOS MORENO
20        Attorneys for Defendant

21   ALSO PRESENT:  AARON SPIVACK, FBI

22

23

24

25

F8KKCARS                     SENTENCE

1          THE DEPUTY CLERK:  In the matter of United States of

2   America versus Cardona, Docket No. 14 CR 314.

3          Counsel, please state your names for the record.

4          MS. CASTELLANO:  Good morning, your Honor.  Gina

5   Castellano and Andrew DeFilippis, for the government.  We're

6   joined by Special Agent Aaron Spivack, of the FBI.

7          THE COURT:  Good morning.

8          MR. DeFILIPPIS:  Good morning.

9          MR. DeMARIA:  Good morning, your Honor.  Daniel

10  DeMaria and Carlos Moreno, for Rene Cardona, who's present.

11         THE COURT:  Good morning.

12         Good morning to you, Mr. Cardona.

13         THE DEFENDANT:  Good morning.

14         THE COURT:  This matter is on for sentencing in United

15  States versus Rene Cardona.

16         Following a bench trial on a April 9th, 2015, the

17  defendant was found guilty of five counts, of charges involving

18  child pornography, including inducing an 11-year-old boy to

19  send sexually explicit photographs of himself over the

20  Internet, and engaging in sexually explicit conduct with a

21  14-year-old boy, producing a video recording of such conduct,

22  and sending that video over the Internet.

23         In connection with today's proceeding, I reviewed the

24  following submissions:  The presentence investigation report,

25  dated July 8, 2015, including the recommendation and addendum;

F8KKCARS                              SENTENCE

the defendant's sentencing memorandum, dated July 27th, with

accompanying exhibits; the government's sentencing memorandum,

dated August 3rd, 2015, with accompanying exhibits; the seven

impact victim impact statements submitted by the government

under letters dated August 5th and August 13th; and I have also

received letters from the defendant and the government dated

August 13th and 17th regarding whether a 15-year mandatory

sentence violates the Eighth Amendment.

       Have the parties received each of these submissions?

       MS. CASTELLANO:  Yes, your Honor.

       MR. DeMARIA:  Yes, your Honor.

       THE COURT:  Am I missing anything?  Is that

everything?

       MS. CASTELLANO:  It's everything, your Honor.

       THE COURT:  And have each of these submissions been

filed on ECF, even in redacted form?

       I understand that, Mr. DeMaria, some of your

submissions were filed in redacted form; is that correct?

       MR. DeMARIA:  Yes, your Honor.  Dr. Krueger's report

was filed under seal and the reference letters filed on ECF do

not contain the addresses, so full copies were filed under seal

as well.

       THE COURT:  All right, thank you.

       MS. CASTELLANO:  Your Honor, the letters from the

government which include the victim impact statements, have not

F8KKCARS                          SENTENCE

1    been filed on ECF.

2              THE COURT:  And that's fine as well.  I think we

3    should, though, file them under seal so that they're part of

4    the record for appeal.  Okay?

5              MS. CASTELLANO:  Understood, sure, your Honor.

6              THE COURT:  Thank you.

7              So let's begin by discussing the presentence report.

8              Mr. DeMaria, have you read the presentence report and

9    discussed it with your client?

10             MR. DeMARIA:  At length, your Honor.

11             THE COURT:  Thank you.

12             Mr. Cardona, have you read the presentence report and

13   had an opportunity to discuss it with your attorney?

14             THE DEFENDANT:  Yes, your Honor?

15             THE COURT:  Mr. DeMaria, do you have any objections to

16   the report?

17             MR. DeMARIA:  No, your Honor.

18             THE COURT:  Does the government have any objections?

19             MS. CASTELLANO:  Your Honor, no objections.  I just

20   note that in the mandatory conditions section of the PSR, I've

21   spoken with the probation officer, and the condition that the

22   defendant register was inadvertently left out.  I have the

23   language that probation usually includes.  I'm happy to read

24   that out loud.

25             THE COURT:  Could you please.

F8KKCARS                        SENTENCE

1        MS. CASTELLANO:  "The defendant shall register with

2   the state sex offender registration agency in any state where

3   the defendant resides, is employed, carries on a vocation, or

4   is a student, and shall provide proof of registration to the

5   probation officer."

6        THE COURT:  All right, thank you.  It doesn't affect

7   the factual findings, so I don't think that we need to modify

8   the report itself but remind me when we get to that.  Okay?

9        MS. CASTELLANO:  Yes, your Honor.

10       THE COURT:  So the presentence report, the Court

11  adopts the factual findings in the report.  The presentence

12  report will be made a part of the record in this matter and

13  placed under seal.  If an appeal is taken, counsel on appeal

14  may have access to the sealed report without further

15  application to the Court.

16       So next we're going to talk with the sentencing

17  guidelines.

18       Mr. Cardona, as I'm sure you're aware, and for those

19  of you who are here today -- the United States Sentencing

20  Guidelines are a set of rules that are published by the

21  Sentencing Commission in order to guide judges as they impose

22  sentences.  And although at one time they were mandatory,

23  meaning that judges were required to follow them, unlike the

24  mandatory minimum sentences that apply in this case, the

25  sentencing guidelines are no longer binding on judges but

F8KKCARS                          SENTENCE

1    judges must nonetheless consider them in determining what an

2    appropriate sentence is, and so that's what we're going to do

3    now.

4            Do the parties agree that the defendant is facing a

5    mandatory sentence of 15 years and a guidelines range of 292 to

6    365 months?

7            MS. CASTELLANO:  Yes, your Honor.

8            MR. DeMARIA:  Yes, your Honor.

9            THE COURT:  One issue I just want to touch on briefly

10   is acceptance of responsibility.  I do think that the defendant

11   has accepted responsibility for his conduct but I will note, as

12   I did at the suppression hearing, that I don't think he was

13   entirely forthcoming with the Court.  Nonetheless, the

14   government is not contesting acceptance points, is not seeking

15   obstruction points, and so I'm not going to press that issue

16   further, but I did just want to note that.

17           In any event, based on the parties' agreement and my

18   independent evaluation of the sentencing guidelines, I accept

19   the guidelines calculation in the presentence report and I find

20   that the defendant's offense level is 40, his criminal history

21   category is I, and his recommended guideline sentence is 292 to

22   365 months in prison, and, as I stated, there is also a 15-year

23   mandatory minimum sentence.

24           Now, as I said a moment ago, the guideline sentence is

25   only advisory; courts may impose a sentence outside of that

F8KKCARS                          SENTENCE

1    range based on one of two legal concepts, a departure or

2    variance.  A departure allows for a sentence outside the

3    advisory range based on some provision of the guidelines.

4            Am I correct that neither side is seeking a departure,

5    as opposed to a variance, which the defendant is seeking under

6    3553(a)?  Is that correct?

7            MS. CASTELLANO:  Yes, from the government, your Honor.

8            MR. DeMARIA:  Yes, your Honor.

9            THE COURT:  All right.

10           So, nevertheless, I have considered whether there is

11   an appropriate basis for departure from the advisory range

12   within the guideline system, and while recognizing that I have

13   the authority to depart, I don't find grounds warranting a

14   departure under the guidelines.

15           I do, though, as I noted, also have the power to

16   impose a nonguideline sentence based on what we call a variance

17   and in light of the factors set forth in the provision of the

18   law 18, United States Code, Section 3553(a).  And I am happy to

19   hear the parties out with respect to the appropriateness of

20   that.

21           Does the government wish to be heard with respect to

22   sentencing?

23           MS. CASTELLANO:  Just very briefly, your Honor.

24           The defendant's conduct in this case is extremely

25   serious, and it is the government's position that the

F8KKCARS                         SENTENCE

1   guidelines range appropriately affects the seriousness of the

2   conduct.

3          The defendant possessed hundreds of images of child

4   pornography.  He induced the production of child pornography

5   from victim 1 over Instagram.  He sexually abused victim 2, and

6   he videotaped himself doing it.  And he distributed an image of

7   victim 2 over the Internet.  He did all of this while he was

8   HIV positive and working and subsequently volunteering at an

9   afterschool program.  The defendant as hundreds of victims,

10  some of whom the Court has now heard from through the victim

11  impact statements.

12         The children who were depicted in those images that he

13  possessed are real victims.  Victim 1 was an 11-year-old boy at

14  the time; victim 2 was a 14-year-old boy at the time.  The harm

15  that this defendant has imposed on his victims is unimaginable.

16         For those reasons, your Honor, the government's

17  position is that a sentence within the sentencing guideline

18  range is appropriate in this case.

19         THE COURT:  I just have a few questions.

20         According to the complaint, at the time of his arrest,

21  the defendant stated that in the course of working at the

22  afterschool program he had inappropriate contact with several

23  children.  Were you able to identify any of the children that

24  he had physical contact with, other than the 14-year-old?

25         MS. CASTELLANO:  May I have one moment, your Honor?

F8KKCARS                           SENTENCE

1          THE COURT:  Sure.

2          (Pause)

3          MS. CASTELLANO:  The FBI was able to identify those

4    children and contact has been made and the children were

5    interviewed, but those children did not want to participate in

6    the investigation.

7          THE COURT:  I know that there is reference to two

8    others, I believe, in his statement, but have you identified

9    how many children he physically abused or had sexual contact

10   with since the time he was an adult?

11         MS. CASTELLANO:  Can I just have a moment?

12         (Pause)

13         MS. CASTELLANO:  Your Honor, my understanding is that

14   in addition to victim 2, the two children noted in the

15   defendant's statement, there were additional two children.  But

16   I'll note that it's the government's current understanding that

17   it may not have been explicit sexual conduct but inappropriate

18   conduct nonetheless.

19         THE COURT:  Two more questions:

20         Has he been charged with statutory rape or any other

21   charge in the state in connection with the abuse of the

22   14-year-old?

23         MS. CASTELLANO:  I don't believe he has yet, your

24   Honor.

25         THE COURT:  Do you know if anything has happened to

F8KKCARS                          SENTENCE

```
 1   the neighbor that Mr. Cardona alleges sexually abused him from

 2   the time that he was 14 until shortly before this incident?

 3   Has he been investigated?  Has he been charged?

 4             MS. CASTELLANO:  The government has no information

 5   right now on exactly who that individual is.  We haven't been

 6   able to identify that individual.

 7             THE COURT:  Are you contesting in any way the accuracy

 8   of his statements to Dr. Krueger?

 9             MS. CASTELLANO:  Your Honor, we don't have any way to

10   verify this.  The defendant hasn't provided any identifying

11   information so we just don't have a position on that.

12             THE COURT:  All right.  Do any victims wish to be

13   heard today?  I've obviously read the victim impact statements.

14   Do any victims wish to be heard today?

15             MS. CASTELLANO:  I don't believe that there are any

16   victims here, but perhaps the Court can ask.

17             THE COURT:  Well, if anyone is here on behalf of a

18   victim -- and no one is raising their hand or indicating that

19   they are.  I see a good number of other people in the courtroom

20   but they may be here to support Mr. Cardona.

21             All right, thank you.

22             MS. CASTELLANO:  Your Honor, may I add one point on

23   that?  The government, through the victim witness coordinator,

24   is in contact with certain of the victims and understands that

25   certain of the victims may make specific restitution requests.
```

F8KKCARS                    SENTENCE

1   We haven't received those to date but believe that they may be

2   forthcoming in the next week or so.  To the extent the

3   government receives those requests, we'll pass them on to the

4   Court.

5           THE COURT:  Okay.  And we'll talk about restitution a

6   little more at the end.

7           MS. CASTELLANO:  Right.

8           THE COURT:  Thank you.

9           Does defense counsel wish to be heard?

10          MR. DeMARIA:  Yes, your Honor, and I will be a lot

11  more lengthy.  If I may use the lectern?

12          THE COURT:  Sure.  Just speak loud and clear and speak

13  into the microphone, please --

14          MR. DeMARIA:  Yes, your Honor.

15          THE COURT:  -- and take your time.

16          MR. DeMARIA:  Your Honor, Mr. Cardona has had a

17  challenging, often sad, life that has led him to contact which

18  he truly, truly regrets.  His father died in prison, at the age

19  of six, his brother died of a drug overdose a few weeks before

20  his father died.  He was the victim of severe bullying at

21  school, and that is only the tip of the iceberg.

22          At the age of 14, a trusted family friend and neighbor

23  got Mr. Cardona addicted to cocaine and used his addiction to

24  rape him repeatedly over the span of a number of years.

25          Mr. Cardona's actions that have led him before the

F8KKCARS                        SENTENCE

1    Court will forever haunt him.  All these people gathered, your

2    Honor, the vast majority of them, bear testament that deep down

3    Mr. Cardona is a good person who unfortunately, due to

4    loneliness, unchecked mental health issues, untreated drug

5    addiction and unaddressed unhealthy sexual urges, did very bad

6    things, which he truly, truly regrets.  And the Court will hear

7    from him after I'm done and he will express that himself.

8           In a case like this, your Honor, it's very important

9    to recognize that Mr. Cardona made a full and candid disclosure

10   to Agent Spivak and the other FBI agents when he was

11   confronted.  He didn't try to rationalize the conduct in any

12   way, he didn't try to minimize it; he accepted full

13   responsibility and gave a candid confession.

14          In that vein, your Honor, recent events at Penn State

15   at Poly Prep at Horace Mann show that when a school or church

16   is involved, a lot of victims come out of the woodwork.  But in

17   this case no one has come out, not even people who Mr. Cardona

18   identified to the agents, which does go to show that he was

19   completely candid with the agents.

20          THE COURT:  Well, this case didn't get the kind of

21   press that those cases did, right?

22          MR. DeMARIA:  That's correct, but the FBI issued a

23   press release, the U.S. Attorney issued a press release, it was

24   in the New York Daily News, it was on some Facebook groups

25   relating to the center in the Bronx.  So it did receive

F8KKCARS                         SENTENCE

1    certainly nothing along the lines of those cases but it did

2    receive its fair share.

3           And, your Honor, the reason I mention acceptance of

4    responsibility -- and I will mention it a few more times -- is

5    that it goes a long way or it goes hand in hand with his

6    prognosis for rehabilitation.

7           Now, I think there is a direct correlation between

8    rehabilitation and acceptance of responsibility, and I want to

9    touch on a couple of points from the government's sentencing

10   memorandum.  First, the government takes the position that

11   Mr. Cardona's suppression motion is somewhat of a factor in

12   terms of acceptance of responsibility.  And that, your Honor,

13   is precisely why I quoted Judge Rakoff front and center in my

14   suppression brief, because he stated, sitting by designation on

15   the Second Circuit, that child pornography is so repulsive a

16   crime, that those entrusted to root it out may in their zeal be

17   tempted to bend or even break the rules, but if they do, they

18   endanger the freedom of all of us.  And so I certainly don't

19   think the Court should take the suppression motion into

20   consideration.

21          The government also states, and the Court as well,

22   that Mr. Cardona was not entirely candid during the suppression

23   hearing.  But, your Honor, respectfully, that overlooks the

24   reality that Mr. Cardona had barely slept the night before the

25   agents came.  Agents flooded the apartment shortly before

F8KKCARS                        SENTENCE

1    6:00 a.m. or at 6:00 a.m.  Mr. Cardona was surely terrified, he

2    was surely disoriented.  This was, without a doubt, a very

3    stressful situation, an unprecedented situation, and the fact

4    that he doesn't remember signing a certain paper at a certain

5    time or being advised of his rights, I would submit, simply

6    shows that the whole day was a blur for him, as opposed to any

7    attempt to mislead the Court.

8              THE COURT:  But he didn't say it was a blur, from what

9    I recall.  What I recall is, he specifically came up with a

10   story about a pen that didn't work, that we had never heard

11   anything about previously.

12             In any event, please go on.

13             MR. DeMARIA:  Your Honor, in that sense, it is a moot

14   point, and you are correct, but I do think that the stress of

15   the event has affected his memory in that regard, as opposed to

16   a purposeful intent to lie or mislead the Court.  And, again,

17   my point in all this, your Honor, is that the suppression

18   motion and his testimony should not be used in determining his

19   sentence.

20             Now, in terms of the offense itself, no one can deny

21   that he committed a very serious offense -- I don't deny it,

22   Mr. Cardona doesn't deny it -- but the Second Circuit in

23   Broxmeyer has instructed us that statutory maximums must be

24   reserved for the worst of the worst offenders; and the question

25   thus becomes how Mr. Cardona's crime compares to others.  And

F8KKCARS                         SENTENCE

```
 1   I've drawn the Court's attention in my memorandum to about 20
 2   or more cases where people charged with production received the
 3   mandatory 15-year minimum.  And I think most of those cases are
 4   comparable or even worse than Mr. Cardona's.
 5          In the Sierra Danyelle Halsey case, the defendant
 6   produced child pornography involving oral sex on an infant and
 7   a five-year-old as well.  And in both those instances, she was
 8   doing it for financial profit.
 9          In the case of Nicholas William Soto, the defendant
10   made a video of a six-year-old performing oral sex on him.
11          In the case of Shane Sells, the defendant had
12   intercourse with a 15-year-old girl, recorded it, disseminated
13   it.
14          In the case of Dale Wray Fulford, the defendant had
15   intercourse with a seven-year-old and continued to have sex
16   with her for about seven years and took a number of sexually
17   explicit pictures.  He was sentenced to 15 years.
18          In comparison to those cases, your Honor, I would
19   submit that Mr. Cardona's case is comparable or even not as
20   serious.  The reason I say that is, his case did not involve
21   violence, it didn't involve sadomasochistic behavior, his crime
22   did not involve infants, it didn't involve prepubescent
23   children, he was not doing this for financial benefit.  And I
24   want to make it clear that this is not to justify his conduct
25   in any way, shape or form but simply to demonstrate that people
```

1    who have committed similar crimes have been sentenced to 15

2    years and, according to Broxmeyer, that is a factor deserving

3    of consideration.

4              Perhaps the biggest factor for consideration is the

5    risk of reoffending.  In the government's memorandum, they

6    state that Dr. Krueger failed to perform any objective testing.

7    In fact, Dr. Krueger performed a number of recognized tests,

8    including the SONAR test, the LS/CMI assessment, the Static

9    99-R.  They're all fully described in his report at page 10.

10   If that isn't objective testing, I simply don't know what is.

11             The government is also mistaken when it states that

12   the report was not written with Dr. Krueger having seen the

13   evidence in this case.  In fact, on pages 1 and 2, Dr. Krueger

14   states he saw the complaint, he saw the indictment, and he saw

15   the Bates stamped documents, about a hundred pages' worth.  And

16   I think this is a very important point.  His report is very

17   important, both in terms of rehabilitation and the aspect of

18   sentencing pertaining to protection of the public.

19             So I note for the record that other than the child

20   pornography itself and the full Instagram transcripts,

21   Dr. Krueger basically reviewed all of the discovery in this

22   case.  And, of course, he had portions of the Instagram

23   transcripts to review when he read the complaint and the

24   discovery which we provided Dr. Krueger with.  And, again, he

25   states this in his report, that he reviewed Bates numbered

F8KKCARS                          SENTENCE

1    pages CARDONA 25 to CARDONA 123.  Those include detailed

2    descriptions of what occurred with victims 1 and 2.

3          Your Honor, with respect to a protection of the -- I'm

4    sorry, did you --

5          THE COURT:  No, no, go ahead.

6          MR. DeMARIA:  With respect to the protection of the

7    public aspect, I want to emphasize the fact that between sex

8    offender treatment, supervision, and sex offender registration,

9    they are all very effective or they can be very effective.

10   And, as noted in my sentencing memorandum, in the Eastern

11   District of New York, there has only been one known offender

12   convicted of a child pornography offense who committed a sexual

13   contact offense while under postrelease supervision.  And, of

14   course, the Court could impose lifetime postrelease supervision

15   on Mr. Cardona.  I had assumed in our district, I couldn't find

16   any studies but I don't see why there would be a big difference

17   than the Eastern District, where they have had remarkable

18   success.

19         Your Honor, I'd like to conclude by asking the Court

20   to maintain the perspective that this case is tragic, not just

21   as a result of the harms to victims 1 and 2 and to the victims

22   whose images exist on Mr. Cardona's computer and the child

23   pornography cyber world, but also due to the circumstances

24   Mr. Cardona's young life and the severe punishment that this

25   Court must impose.  And I would submit the sentence of 15 years

F8KKCARS                              SENTENCE

1    is adequate to justify the factors of 3553(a).

2              THE COURT:  Thank you.

3              MR. DeMARIA:  Thank you.

4              THE COURT:  Mr. Cardona, is there anything you'd like

5    to say today?

6              THE DEFENDANT:  Yes.

7              Should I stand?

8              THE COURT:  Sure.  Just speak into the microphone so I

9    can hear you, please.

10             THE DEFENDANT:  Your Honor, I just want to say that

11   I'm very sorry to the victims, I'm sorry for all the pain that

12   I have caused them, I'm sorry for the pain that I've caused

13   their families, I'm sorry, I'm ashamed for what I've done.  I

14   pray that God will give them peace somehow, especially after I

15   know how much this has impacted them.  I wish I could take it

16   back.  I'm so sorry.

17             I also want to say sorry to my family because I'm also

18   putting them through this terrible time, and I'm very sorry.  I

19   wish I could take it back.

20             THE COURT:  Thank you.

21             Is there any reason why sentence cannot be imposed at

22   this time?

23             MS. CASTELLANO:  No, your Honor.

24             MR. DeMARIA:  Yes, your Honor, as stated in our letter

25   of August 13th, we believe that the 15-year mandatory minimum

1    from 18, U.S.C., 2251 violates the Eighth Amendment prohibition

2    against cruel and unusual punishment.

3         THE COURT:  All right.  I'm happy to rule on that and

4    I will rule on that argument shortly.

5         MR. DeMARIA:  And that's our only objection, in that

6    regard.

7         THE COURT:  I don't think there is a need to put off

8    this proceeding in light of Judge Weinstein's case but I am

9    ready to rule on that issue, so I'll do so shortly.

10        Under the law, I'm required to consider the advisory

11   guideline range of 292 to 365 months as well as various other

12   factors that are outlined in a provision of federal law, 18,

13   United States Code, Section 3553(a), that I have mentioned a

14   number of times and will continue to do so.

15        Those factors include, but are not limited to, the

16   nature and circumstances of the offense and the personal

17   history and characteristics of the defendant, because every

18   defendant must be considered individually as a person.  Judges

19   are also required to consider the need for the sentence imposed

20   to reflect the seriousness of the offense, promote respect for

21   the law, provide just punishment for the offense, afford

22   adequate deterrence to criminal conduct, and avoid unwarranted

23   sentencing disparities, among other things.

24        First, I'm going to address, Mr. DeMaria, your

25   contention that Section 2251's 15-year mandatory minimum

F8KKCARS                    SENTENCE

sentence constitutes cruel and unusual punishment in violation

of the Eighth Amendment.  I disagree.  The punishment will be

deemed cruel and unusual only when it is disproportionate to

the crime.  That's a quote from the Graham case, 560 U.S. at

59.  Constitutional proportionality is a narrow principle in

that it forbids only extreme sentences that are grossly

disproportionate to the crime.  That's from the Harmelin case,

501 U.S. at 997.

          In reviewing the proportionality of a sentence as

applied to a particular case, a Court must first consider

whether the gravity of the offense and the severity of the

sentence give rise to an inference of gross disproportionality.

That's from the Reingold case, 731 F.3d at 216.

          There can be no question as to the seriousness of the

offense here.  As the Second Circuit stated in Reingold,

Congress, courts and scholars all recognize that child

pornography crimes at their core demand the sexual exploitation

and abuse of children.  Children are seriously harmed,

physically, emotionally and mentally in the process of

producing such pornography.

          In the Ferber case, the Supreme Court noted that

severe criminal penalties for child pornography crimes is the

most expeditious, if not the only, practical method of

enforcing the law.  458 U.S. at 760.

          Here, after the defendant's repeated urging, his

1    11-year-old victim sent him pictures over the Internet,

2    including one of his genitals as well as a video of him

3    masturbating.  During sexually explicit conversations with this

4    child, the defendant fully recognized the severity of his

5    conduct, remarking that he would go to jail if caught but that

6    11 is so "cute."  That 11-year-old's mother tells us he is now

7    suicidal and that she is at a loss as to how to help him.

8            The defendant also induced a 14-year-old boy to engage

9    in oral and anal sex with him, which he did 10 to 20 times over

10   a yearlong period and, on at least one occasion, videotaped the

11   14-year-old engaging in oral sex and then distributed that

12   video on the Internet.  The 14-year-old's grandmother said that

13   the defendant was like a brother to her grandson, someone she

14   had trusted but who betrayed them.  At the time he had such

15   sexual contact with the 14-year-old, the defendant was aware of

16   the fact that he was HIV positive.

17           The defendant also had a collection of hundreds of

18   images of child pornography, including ones of prepubescent

19   children engaging in sexually explicit conduct.  At the time of

20   his arrest, he admitted to having had sexual contact with at

21   least two boys since he was an adult, one he met at church and

22   the other at an afterschool program where he worked.

23           Balanced against the gravity of the defendant's

24   conduct, the severity of a 15-year sentence for the production

25   of child pornography simply doesn't render the mandatory

F8KKCARS                        SENTENCE

1    minimum grossly disproportionate.  This holding is consistent

2    with the numerous circuit courts of appeal that have similarly

3    rejected Eighth Amendment challenges to mandatory minimum

4    sentences in child pornography cases.  See, for example, the

5    Ramos and Puglisi cases from the Second Circuit, the Heaton

6    case from the Eleventh Circuit, the Hart case from the Sixth

7    Circuit, the Malloy case from the Fourth Circuit, and the Polk

8    case from the First Circuit.

9         Indeed, the defendant himself rightly concedes that

10   appellate courts have consistently held that these mandatory

11   minimums do not violate the Eighth Amendment.  That's from the

12   defendant's letter brief at 1.

13        The defendant's only specific arguments challenging

14   the mandatory minimum do not address this case law and do not

15   change the outcome in this case.

16        First, the defendant contends that the mandatory

17   minimum is unconstitutional because it eliminates the

18   sentencing judge's discretion.  By that rationale, no mandatory

19   minimums would be constitutional, which is clearly not the law.

20   As the Supreme Court has stated, there can be no serious

21   contention that a sentence which is not otherwise cruel and

22   unusual becomes so simply because it's mandatory.  That's from

23   the Harmelin case, 501 U.S. at 995.

24        Second, the defendant contends that the mandatory

25   minimum sentence is unconstitutional because he was repeatedly

1   raped by a neighbor beginning at the age of 14.  Although this

2   is undoubtedly a mitigating factor -- and I'm going to assume

3   the truth of that, the government doesn't contest it even

4   though it hasn't been able to corroborate it but I am going to

5   assume the truth of it -- although undoubtedly a mitigating

6   factor, which I will consider in sentencing, it does not render

7   the mandatory minimum grossly disproportionate to the

8   defendant's offense.  See, for example, the Eleventh Circuit's

9   opinion in the Heaton case, 549 F. App'x at 835.

10          In sum, it is the Court's view, given the severity of

11   the defendant's conduct here, a sentence of 15 years in prison

12   is appropriate, whether mandatory or not, and does not violate

13   the Eighth Amendment.

14          The harder question, in my view, is whether a sentence

15   of 15 years is sufficient but not greater than necessary to

16   comply with the purposes of sentencing, as set forth in the

17   law, or whether a higher sentence in or closer to the

18   guidelines range is appropriate in this case.

19          This is an immeasurably difficult question.  On the

20   one hand, I have a child predator before me, a man who sought

21   out children, both on the Internet and in real life, at church,

22   at an afterschool program that he worked at, and he abused

23   them.  He enticed them to engage in sexual activity by

24   flattering, flirting and telling them he loved them, as he told

25   the 11-year-old, and then urging them to send graphic videos of

F8KKCARS                    SENTENCE

1    themselves or making them himself.  He not only contributed to

2    the child pornography market by collecting images of child

3    abuse for his own gratification, but he contributed to that

4    market with his own homemade pornography.

5            Finally, his conduct involved having anal sex with a

6    14-year-old boy at a time the defendant knew he was HIV

7    positive.  I'll note that in the Weisser case, 417 F.3d at 352,

8    the Second Circuit stated that an upward departure would be

9    appropriate in a case in which a defendant had sexual activity

10   with a child while knowingly infected with HIV, although the

11   government is not seeking such a departure here and I am not

12   applying such a departure.

13           Defense counsel stated in his letter that the most

14   serious part of his crime was not so much the production of

15   child pornography but the sexual abuse of a minor.  But

16   whichever conduct you look at as more or less serious or

17   egregious in this case, I can't think of many people who

18   present more of a danger to our society, and the most

19   vulnerable and defenseless of those in it, than this defendant.

20           On the other hand, I see before me a scared, young man

21   who looks not much older than a child himself.  He was sexually

22   abused, he says, by a neighbor 20 years his senior, from the

23   age that he was 18 up until the time of his arrest.  This man

24   also allegedly provided him with cocaine and marijuana, and, as

25   a result, the defendant now has substance abuse problems as

1    well.  He had no treatment for any of his prior diagnoses prior

2    to his arrest in this case.

3           I've considered all of the arguments counsel have

4    made.  I've read all of the letters from family members.  I see

5    how many people, Mr. Cardona, are here to support you because

6    they care about you.  I did read those letters, and your family

7    members talk about you as humble and kind and loving and

8    reliable.  And, of course, I considered the expert reports

9    submitted.

10          So, Mr. Cardona, please rise for the imposition of

11   sentence.

12          It's the judgment of this Court that you be committed

13   to the custody of the Bureau of Prisons for a term of 210

14   months, to be followed by a term of supervised release of ten

15   years.  I believe that this sentence is sufficient but not

16   greater than necessary to comply with the purposes of

17   sentencing set forth in 18, United States Code, Section

18   3553(a).

19          You can be seated.  I'm going to read the conditions

20   of your supervised release aloud.

21          All of the standard conditions of supervised release

22   shall apply.  In addition, the mandatory conditions shall also

23   apply:  The defendant shall not commit another federal, state

24   or local crime; shall not illegally possess a controlled

25   substance; shall not possess a firearm or destructive device;

F8KKCARS                        SENTENCE

1    the mandatory drug testing condition is suspended due to the

2    imposition of a special condition requiring drug treatment and

3    testing; and the defendant shall cooperate in the collection of

4    DNA, as directed by the probation officer.

5            Ms. Castellano, can you please read the range of the

6    sex offender registration condition?  And I am going to impose

7    that condition as well.

8            MS. CASTELLANO:  Yes, your Honor.

9            The defendant shall register with the state sex

10   offender registration agency in any state where the defendant

11   resides, is employed, carries on a vocation, or is a student

12   and shall provide proof of registration to the probation

13   officer.

14           THE COURT:  So that condition is also imposed.

15           In addition, I am going to follow the probation

16   department's recommendation with regard to the special

17   conditions, in light of the nature of the offense here:

18           First, the defendant is to report to the nearest

19   probation office within 72 hours of release from custody.  That

20   would apply in any event.  And he will be supervised in the

21   district of his residence.  But, in addition, the defendant

22   will participate in a an outpatient treatment program approved

23   by the United States Probation Office, which program may

24   include testing to determine whether the defendant has reverted

25   to using drugs or alcohol.  The defendant shall contribute to

1    the costs of services rendered, based on the defendant's

2    ability to pay and the availability of third-party payments.

3    The Court authorizes the release of available drug treatment

4    evaluations and reports, including the presentence

5    investigation report, to the substance abuse treatment

6    provider, and this condition is being imposed in light of his

7    drug addiction.

8              The defendant shall also undergo a sex offense

9    specific evaluation and participate in an outpatient sex

10   offender treatment and/or outpatient mental health treatment

11   program, approved by the U.S. Probation Office.  The defendant

12   shall abide by all rules, requirements and conditions of the

13   sex offender treatment program, including submission to

14   polygraph testing.  The defendant shall waive his right of

15   confidentiality in any records for mental health assessment and

16   treatment imposed as a consequence of this judgment, to allow

17   the probation officer to review the defendant's course of

18   treatment and progress with a treatment provider.  The

19   defendant shall contribute to the costs of services rendered

20   based on the defendant's ability to pay and the availability of

21   third-party payments.  The Court authorizes the release of

22   available psychological and psychiatric evaluations and

23   reports, including the presentence investigation report, to the

24   sex offender treatment provider and/or mental health treatment

25   provider.

F8KKCARS                          SENTENCE

The defendant shall participate in the computer Internet monitoring program administered by the U.S. Probation Office.  The defendant must provide the U.S. Probation Office advance notice of any computers, automated services or connected devices that will be used during the term of supervision and that can access the Internet.

The U.S. Probation Office is authorized to install any application as necessary to survey all activity on computers or connected devices owned or operated by the defendant.  The defendant may be required to pay the cost of monitoring services at the monthly rate provided by the U.S. Probation Office.  The rate and payment schedule are subject to periodic adjustments by the U.S. Probation Office.

The U.S. Probation Office shall be notified via electronic transmission of impermissible, suspicious activity or communications occurring on such computer or connected device, consistent with the computer monitoring policy in effect by the probation office.

As triggered by impermissible suspicious activity, the defendant shall consent to and cooperate with unannounced examinations of any computer equipment owned or used by the defendant.  This examination shall include, but is not limited to, retrieval and copying of all data from the computer, connected device, storage media and any internal or external peripherals and may involve removal of such equipment for the

F8KKCARS                         SENTENCE

1    purpose of conducting a more thorough inspection.

2              The defendant shall not have contact with any of the

3    victims in this case.  That includes physical, written, visual

4    and telephonic contact with such persons.  Additionally, the

5    defendant shall not directly cause or encourage anyone else to

6    have such contact with the victims.

7              The defendant shall not have deliberate contact with

8    any child under 18 years of age unless approved by the

9    probation office.  The defendant shall not loiter within a

10   hundred feet of schoolyards, playgrounds, arcades or other

11   places primarily used by children under the age of 18.

12             He shall submit his person, residence, place of

13   business, vehicle and any property, computers, as defined in

14   18, United States Code, Section 1030(e)(1), electronic

15   communications, data storage devices and/or other media under

16   his control, to a search on the basis that the probation office

17   has a reasonable suspicion that contraband or evidence of a

18   violation of the conditions of his supervised release may be

19   found.  The search must be conducted at a reasonable time and

20   in a reasonable manner.  Failure to submit to such a search may

21   be grounds for revocation.  He shall inform any other residents

22   that the premises may be subject to search pursuant to this

23   condition.

24             So those are the conditions of his supervised release.

25             I decline to impose a fine because the probation

1    office has reported that he is unable to pay one.

2            I am required to impose the mandatory $500 special

3    assessment, and I do so.

4            Let's talk about restitution for a moment.

5            Ms. Castellano?

6            MS. CASTELLANO:  Your Honor, as I mentioned before,

7    the victim witness coordinator from this district and the

8    District of Guam are working with the victims or are in

9    contact, I should say, with the victims in this case.  No

10   specific restitution requests have been received but I

11   understand that they may be forthcoming.  So we will do our

12   best to receive those in the next week or two and to pass those

13   along to the Court and to defense counsel.

14           THE COURT:  Any objection, Mr. DeMaria?  Hold off on

15   imposing the restitution.

16           MR. DeMARIA:  No, your Honor.

17           THE COURT:  Is the government seeking forfeiture?

18           MS. CASTELLANO:  No, your Honor.

19           THE COURT:  So there will be no forfeiture.  The

20   restitution order will be forthcoming.

21           Does either counsel know of any legal reason why this

22   sentence should not be imposed as stated, other than the ones

23   that you have previously articulated, Mr. DeMaria?

24           MS. CASTELLANO:  No, your Honor.

25           MR. DeMARIA:  No, your Honor.

1    THE COURT:  In terms of recommendations, I'll

2    recommend that he be put in a sex offender treatment program

3    while he's incarcerated.  I assume that that would have

4    happened automatically.  I saw reference to the RDAP program as

5    well, and I am happy to make that recommendation, Mr. DeMaria,

6    if you'd like me to do that.

7    MR. DeMARIA:  Yes, your Honor, please.  And if you

8    could recommend that he complete those programs at FMC Devens?

9    That's the closest facility with sex offender treatment to his

10    family in New York City.

11    THE COURT:  All right, so I'll make that

12    recommendation.  Of course it's up to the Bureau of Prisons but

13    I'll make that recommendation.

14    That is the sentence of this Court.

15    Mr. Cardona, you have a right to appeal your

16    conviction and sentence except to whatever extent you may have

17    validly waived that right as part of your plea agreement.  If

18    you do choose to appeal, the notice of appeal must be filed

19    within 14 days of the judgment of conviction.  If you are not

20    able to pay the cost of an appeal, you may apply for leave to

21    appeal in forma pauperis, which simply means that court costs,

22    such as filing fees, will be waived.  If you request, the Clerk

23    of Court will prepare and file a notice of appeal on your

24    behalf.

25    This is a sad case all around.  Mr. Cardona, I know

F8KKCARS                       SENTENCE

1   that you have had a lot of harm done upon you in your young

2   life but you've also done a lot of harm on others.  I know that

3   you have some really hard times ahead of you but you have an

4   incredibly supportive family and I am really hopeful that the

5   treatment that you will get while you're incarcerated and the

6   treatment you'll get on supervised release, I hope that will

7   help you move forward and lead a productive and law-abiding

8   life and I do wish you luck with that.

9           Are there any other applications?

10          MS. CASTELLANO:  Not from the government, your Honor.

11          MR. DeMARIA:  Yes, your Honor.  Pursuant to Rule

12  38(b)(2) of the rules of criminal procedure, I'd ask the Court

13  to make a recommendation that Mr. Cardona remain in MDC

14  Brooklyn until the conclusion of his direct appeal so as to

15  assist counsel in preparing his appeal.  I will note that

16  Mr. Cardona has been extremely involved thus far.  Due to the

17  nature of his case, it's incredibly dangerous for him to have

18  any paperwork on his case with him in jail.  Of course, people

19  who commit crimes like he did are targets in prison and so

20  every time he's wanted to look at a document, we have to meet

21  with him face to face.  And we'd like to continue doing that

22  until the conclusion of his direct appeal.  And, again, that

23  was rule 38(b)(2).

24          THE COURT:  Does the government have a position on

25  that?

1         MS. CASTELLANO:  Your Honor, we don't.  We understand,

2   as the Court had said previously, that it's the discretion of

3   the Bureau of Prisons where the defendant will be placed and

4   your Honor can make recommendations.  Other than that we have

5   no position.

6         THE COURT:  How long do you think it will take you to

7   do that, Mr. DeMaria, to work on the appeal?

8         MR. DeMARIA:  I believe we need -- first of all, we

9   need to order the transcript.  I assume that will take a couple

10  of weeks.  Then to file his principal brief, I believe we

11  have --

12        THE COURT:  You can get the transcript much quicker

13  than that, from today's proceeding.

14        MR. DeMARIA:  So, in that case, your Honor, if we can

15  get it, let's say, in a week and then we submit his principal

16  brief in 90 days, the government will have 90 days to reply, I

17  believe, approximately.  Then we file a reply brief 14 days

18  later, so approximately six to eight months, I would say.

19        THE COURT:  I'm going to think about that and I will

20  reach out to the appropriate people so I can make a more

21  informed decision about that and then I will rule on that.  I

22  don't think that that needs to be part of the sentencing today

23  but I'll consider that request.

24        MR. DeMARIA:  Thank you, your Honor.

25        THE COURT:  Anything else?

F8KKCARS                        SENTENCE

1            MS. CASTELLANO:  Not from the government, your Honor.

2            THE COURT:  All right, thank you, all.  We are

3    adjourned.

4            (Adjourned)